UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PATRICIA LEEANN HERNANDEZ, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CAUSE NO. 1:16-cv-00323-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Nancy A. Berryhill,* | ) |
| *Acting Commissioner of SSA,*[1] | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Patricia Leeann Hernandez appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[2] (DE 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

Hernandez applied for SSI in March 2013, alleging disability as of June 1, 2012. (DE 8 Administrative Record ("AR") 155-63). The Commissioner denied Hernandez's application initially and upon reconsideration. (AR 92-95, 101-07). A hearing was held on December 9, 2014, before Administrative Law Judge Maryann Bright (the "ALJ"), at which Hernandez, who was represented by counsel, and a vocational expert, Sharon Ringenberg (the "VE"), appeared. (AR 31-72). On February 20, 2015, the ALJ rendered an unfavorable decision to Hernandez,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

concluding that she was not disabled because she could perform a significant number of sedentary jobs in the economy despite the limitations caused by her impairments. (AR 14-24). The Appeals Council denied Hernandez's request for review (AR 1-10), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Hernandez filed a complaint with this Court on September 2, 2016, seeking relief from the Commissioner's decision. (DE 1). Hernandez advances just one argument in this appeal: that the ALJ improperly evaluated the opinion of her treating specialist, Dr. Brandon Hardesty. (DE 20 at 5-6).

At the time of the ALJ's decision, Hernandez was 28 years old (AR 24, 155); had completed the 10th grade (AR 186); and had past work experience as a cashier, a waitress, and a production assembler (AR 186, 216). At the time of the hearing, Hernandez was five feet, eight inches tall, and weighed 250 pounds. (AR 185). Hernandez alleges disability due to antiphospholipid antibody syndrome, history of deep venous thrombosis ("DVT"), torn meniscus in the left knee, obesity, and lumbar degenerative disc disease. (DE 20 at 2).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed

only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id.* Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

### III. ANALYSIS

#### A. *The Law*

Under the Act, a plaintiff is entitled to SSI if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Hernandez is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required her to assess the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the

claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

### B. The ALJ's Decision

On February 20, 2015, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 14-24). She found at step one of the five-step analysis that Hernandez had not engaged in substantial gainful activity after her application date of March 21, 2013. (AR 16). At step two, the ALJ determined that Hernandez had the following severe impairments: antiphospholipid antibody syndrome, history of DVT, torn meniscus left knee, obesity, and lumbar degenerative disc disease. (AR 16). At step three, the ALJ found that Hernandez's impairment or combination of impairments were not severe enough to meet a listing. (AR 18).

Before proceeding to step four, the ALJ concluded that Hernandez's symptom testimony was not entirely credible (AR 20) and assigned the following RFC:

> [T]he claimant has the [RFC] to perform less than the full range of sedentary work . . . . She can engage in lifting, carrying, pushing and pulling up to 10 pounds occasionally; standing or walking for

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

4

> approximately 2 hours per 8-hour work day, and sitting for
> approximately 6 hours per 8[-]hour work day, with normal breaks
> and with the option to sit or stand alternatively at will provided
> that she is not off task more than 10% of the work period;
> occasional[ly] climbing ramps and stairs, balancing, stooping,
> crouching, kneeling, and crawling; never climbing ladders, ropes,
> and scaffolds. The claimant must avoid concentrated exposure to
> hazards such as operating dangerous vehicles and machinery and
> working around unprotected heights. The claimant should avoid
> concentrated exposure to extreme heat, extreme cold, wetness, and
> excessive vibration.

(AR 19). At step four, the ALJ concluded that Hernandez could not perform any of her past relevant work. (AR 22). At step five, based on the assigned RFC and the VE's testimony, the ALJ concluded that a hypothetical individual with Hernandez's RFC, experience, and education could perform a significant number of unskilled, sedentary occupations in the economy, including a charge account clerk, a telephone order clerk, and an addresser. (AR 23). Therefore, Hernandez's claim for SSI was denied. (AR 24).

### C. Dr. Hardesty's Opinion and the Assigned RFC

Hernandez argues that the RFC assigned by the ALJ is not supported by substantial evidence. Specifically, Hernandez faults the ALJ for not fully adopting the medical statement issued after the hearing by Dr. Hardesty, her treating specialist, in which Dr. Hardesty opined that Hernandez needs to elevate her legs above the waist for two to three hours during an eight-hour workday. (AR 834). Contrary to Hernandez's assertion, the assigned RFC is supported by substantial evidence.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). That is, the "RFC is not

5

the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374284, at *1; *see* 20 C.F.R. § 416.945(a)(1) ("Your [RFC] is the most you can still do despite your limitations."); *see also Young v. Barnhart*, 362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted). The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 416.945. Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 416.927(c)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record."[4] *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. 404.1527(d)(2)); *see Johansen v.*

---

[4] In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. *See Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); 20 C.F.R. § 416.927(c).

*Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). The Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 416.927(c)(2).

Here, the record reveals that Hernandez saw Dr. Hardesty of the Indiana Hemophilia & Thrombosis Center in November 2013, January 2014, and November 2014 for her antiphospholipid antibody syndrome and recurrent thromboses. (AR 728-35, 819-21). At those visits, Hernandez did not complain of lower extremity edema, and upon clinical examination, no lower extremity edema was observed. (AR 728-35, 819-20). Nor did Dr. Hardesty's treatment notes mention any need for Hernandez to elevate her legs. (AR 728-35, 819-21). Similarly, treatment notes from other providers of record did not reflect regular edema in Hernandez's legs or a need for Smith to elevate her legs. (*See, e.g.*, 276 (no edema), 361 (same), 368 (same), 380 (same), 391 (same), 415 ("trace" edema), 417 (no edema), 440 (same), 443 (same), 494 (same), 513 (same), 533 (mild left leg edema), 580 (no edema), 591 (same), 612 (same), 652-54 (complained of edema after walking at the county fair, but no edema noted on exam), 658 (no edema), 663-65 (same), 669-71 (same), 725 (same), 760 (same), 765 (same), 772 (same), 782 (same)). In fact, Hernandez does not dispute that the only mention in any treatment notes concerning elevation of her legs was in an emergency room note in March 2013, in which she was instructed to "rest, elevate the left leg, [and] wear the compression stocking in the day time when up." (AR 535).

At the hearing, however, Hernandez testified that her left leg "swells easily and very bad" such that it has to be "propped up a lot," and that every night when she goes to bed her legs are swollen. (AR 50, 62). She stated that she typically elevates her left leg four to five hours during

7

an eight-hour time period, and that the least amount she could elevate her left leg to avoid severe swelling is two to two-and-a-half hours in an eight-hour time period. (AR 50-51, 55-57). In order to elevate her left leg above her waist, she sits in a recliner or lies in bed and puts pillows or a heavy blanket under her leg, commenting that "that's what Jill [Berg, a cardiac practitioner,] always tells me to get the swelling to go down." (AR 51).

When posing hypotheticals to the VE, the ALJ asked the VE how high of elevation of feet is tolerated in sedentary work. (AR 67-68). The VE responded that a person could still perform sedentary work if she needed to elevate her feet up to 18 inches, but that all competitive jobs would be eliminated if she needed to elevate her feet to waist height. (AR 67-68).

At the close of the hearing, the ALJ asked Hernandez's attorney whether he had anything further. (AR 69). The attorney added that he viewed Hernandez's need to elevate her legs as consistent with the evidence of a severe thrombosis and severe clotting disorder. (AR 69-70). The ALJ inquired as to where in the medical record there was medical evidence supporting a need for Hernandez to elevate her feet to waist height. (AR 70). Hernandez's attorney then conceded that this purported need was not documented in the record, but that Dr. Hardesty and Ms. Berg had told Hernandez to do so; the attorney then asked the ALJ if he could "have some time to try and get something." (AR 70). The ALJ then asked Hernandez whether Dr. Hardesty and Ms. Berg had instructed her to keep her legs up; Hernandez responded: "[Dr. Hardesty] advised me, if . . . my legs begin to swell, to elevate them." (AR 71).

The day after the hearing, Dr. Hardesty completed a one-page medical statement on Hernandez's behalf, answering three interrogatories posed by Hernandez's counsel. (AR 834). As to whether Hernandez needed to elevate her legs during the day, Dr. Hardesty circled "Yes,"

8

and as to "how many hours in an eight hour day," Dr. Hardesty circled "2" and "3." (AR 834). As to "how high," Dr. Hardesty circle "Above the Waist." (AR 834). In the Diagnoses and Comments section, Dr. Hardesty wrote: "Antiphospholipid Antibody Syndrome, [history] of DVT." (AR 834).

In her decision, the ALJ considered Hernandez's assertions of frequent leg edema, that her compression stockings allegedly did not alleviate the edema, her purported need to elevate her legs for two to five hours a day, and Dr. Hardesty's medical statement indicating that Hernandez needs to elevate her legs above her waist for two to three hours in an eight-hour period. (AR 20-22). The ALJ concluded, however, that Hernandez's symptom testimony was not entirely credible, a finding that Hernandez does not challenge in this appeal. (AR 20). In doing so, the ALJ observed that Hernandez's examinations consistently revealed little to no lower extremity edema and that medications appeared effective in managing this symptom. (AR 21-22). Additionally, the ALJ specifically addressed Dr. Hardesty's medical statement as follows:

> Post-hearing, the claimant's representative submitted a medical statement from the claimant's treating source, Dr. Hardesty, stating that she needs to elevate her legs above the waist for 2-3 hours a day (Ex. 32F). However, as his treatment notes at exhibits 22F and 30F do not reflect complaints or findings of lower extremity edema and do not support a need to elevate her legs at waist level, the undersigned gives only partial weight to this medical source opinion (SSR 96-2p). Per testimony from the impartial vocational expert, the above [RFC] would accommodate an individual elevating her feet up to 18 inches.

(AR 22).

Hernandez argues that the ALJ erred in not fully crediting Dr. Hardesty's opinion about her need to elevate her legs above her waist for two to three hours in an eight-hour workday, and

9

in failing to find her disabled as a result of this limitation. The Court is not persuaded. The ALJ gave a "good reason" for not fully adopting Dr. Hardesty's limitation. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." (citations omitted)). The ALJ observed that Dr. Hardesty's medical statement was not supported by, or consistent with, his own treatment notes, in that his treatment notes do not reveal complaints or findings of lower extremity edema or a need for Hernandez to elevate her legs at waist level.[5] (AR 22); *see Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012) (finding a treating specialist's opinion that the claimant must elevate his legs all day as internally inconsistent with the specialist's own treatment notes, which made no mention of a need for the claimant to elevate his feet); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (noting that an ALJ can discount a physician's opinion if it is internally inconsistent); *Clifford*, 227 F.3d at 871 (explaining that medical evidence may be discounted if it is internally inconsistent).

Hernandez, however, argues that the ALJ mischaracterized the evidence in that Hernandez did complain of lower extremity swelling to Dr. Ami Rice, an examining physician.[6] (DE 20 at 6 (citing AR 579)). But Hernandez's argument is misplaced; the ALJ correctly observed that *Dr. Hardesty's* own treatment notes do not reveal any complaints or findings of lower extremity edema. (AR 22). Thus, the ALJ did not mischaracterize the record in this

---

[5] Curiously, Hernandez contends in her reply brief that the Commissioner's argument "that the treatment notes say nothing about instructions to elevate her legs" is impermissible *post hoc* argument. (DE 31 at 1). But Hernandez is wrong; the ALJ expressly listed this as a reason to discount Dr. Hardesty's medical statement. (*See* AR 22 ("However, as his treatment notes at exhibits 22F and 30F do not reflect complaints or findings of lower extremity edema *and do not support a need to elevate her legs at waist level*, the undersigned gives only partial weight to this medical source opinion (SSR 96-2p)." (emphasis added))).

[6] Although Hernandez complained of lower extremity edema to Dr. Rice, Dr. Rice' clinical examination documented an absence of any lower extremity edema. (AR 580).

respect.

Hernandez also argues that her use of compression stockings and elevating her legs four to five hours in the recliner at home are successful in controlling her edema, and that is why her clinical examinations consistently revealed an absence of edema. (DE 20 at 6). But this argument is at odds with Hernandez's own testimony at the hearing. Hernandez testified that she wears the compression stockings but they do not "help all that much" in keeping the swelling down, that her legs and feet start to swell after standing just 15 to 20 minutes, and that every night when she goes to sleep, her legs are swollen. (AR 45-46, 49, 62). This testimony portraying constant edema sharply contrasts with the consistent findings of no or little lower extremity edema during clinical examinations.

Finally, Hernandez argues that Dr. Hardesty's instruction to elevate her legs above the waist for two to three hours each workday was "not just for edema but to avoid clotting in the first place." (DE 20 at 6). But again this argument defies Hernandez's own testimony at the hearing. Hernandez testified that Dr. Hardesty advised her that "if . . . [her] legs begin to swell, to elevate them." (AR 71). The ALJ reasonably inferred that Dr. Hardesty would have included a restriction for Smith to regularly elevate her legs above her waist in his treatment notes if it was medically necessary for her diagnoses of antiphospholipid antibody syndrome and history of DVT. (AR 22); *see Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) (acknowledging that an ALJ is entitled to make reasonable inferences from the evidence before him). As such, the ALJ assigned partial weight to Dr. Hardesty's medical statement and reasonably concluded, per the VE's testimony, that the assigned RFC would accommodate Hernandez elevating her feet up to 18 inches during the workday. (AR 22, 67-68). Therefore, Hernandez's final argument

lacks traction.

In sum, "[a]n ALJ may discount a treating physician's medical opinion if it is . . . internally inconsistent, as long as [she] minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (third alteration in original) (citation omitted); *see Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (stating that the ALJ must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning). Here, the ALJ adequately explained why she assigned partial weight to Dr. Hardesty's opinion that Hernandez needed to elevate her legs at waist level two to three hours in an eight-hour workday, and the ALJ's rationale for doing so is supported by the record. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (observing that in assigning an RFC, "an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" (citation omitted)); 20 C.F.R. § 416.946(c); SSR 96-5p, 1996 WL 374183, at *4. Consequently, the ALJ's consideration of Dr. Hardesty's opinion and the assigned RFC will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Hernandez.

SO ORDERED.

Entered this 22nd day of August 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge